*In the*

# United States Court of Appeals

*For the*

# Ninth Circuit

---

BILLFLOAT INC., a Delaware corporation, DBA SmartBiz Loans,

*Plaintiff-Appellant,*

v.

COLLINS CASH INC., a New York corporation,
DBA Smart Business Funding and ABRAHAM COHEN,

*Defendants-Appellees.*

---

*Appeal from a Decision of the United States District Court for the Northern District of California,
No. 3:20-cv-09325-EMC · Honorable Edward M. Chen*

---

# SECOND BRIEF ON CROSS-APPEAL
## [APPELLEES' PRINCIPAL AND RESPONSE BRIEF]

---

GORDON E. GRAY, III, ESQ.
GRAY LAW FIRM
4401 North Atlantic Avenue, Suite 233
Long Beach, California 90807
(562) 984-2020 Telephone
geg@grayiplaw.com

JOSEPH A. MANDOUR, III, ESQ.
BEN LILA, ESQ.
LAW OFFICES OF TODD A. MOORE
8605 Santa Monica Boulevard, Suite 1500
Los Angeles, California 90069
(858) 487-9300 Telephone
jmandour@mandourlaw.com
blila@mandourlaw.com

*Attorneys for Appellees Collins Cash Inc. and Abraham Cohen*




## CORPORATE DISCLOSURE STATEMENTS

Collins Cash, Inc. has no parent corporation and no publicly held companies own 10% or more of its stock

# TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENTS ...........................................i

TABLE OF CONTENTS .............................................................ii

TABLE OF AUTHORITIES....................................................... v

STATEMENT OF THE CASE ................................................. 1

STATEMENT OF JURISDICTION........................................ 5

ISSUES PRESENTED .............................................................. 5

SUMMARY OF THE ARGUMENT ......................................... 6

ARGUMENT........................................................................... 7

    I.    Standards of Review ................................................ 7

    II.    The Jury Properly Found that BillFloat Did Not Meet Its Burden of Proof to Establish a Likelihood of Confusion.................................................................. 8

        a.    Strength of the SMARTBIZ marks .............................. 10

        b.    Proximity or Relatedness of the Goods........................ 11

        c.    Similarity of the Marks ................................................ 12

        d.    Actual Confusion.......................................................... 14

        e.    Defendants' Intent ....................................................... 15

        f.    Marketing and Advertising Channels ......................... 16

        g.    Consumer's Degree of Care ......................................... 17

        h.    Service Expansion......................................................... 18

    III.    BillFloat Failed to Properly Object to the Jury Instructions Given by the District Court .............................. 19

IV.   The District Court's Denial of BillFloat's Motion to Exclude Appellees' Survey and Expert Testimony was Proper ...................................................................... 20

     A.   Mr. Keegan Conducted a Proper *Squirt* Survey with Natural Controls .................................... 21

     B.   Mr. Keegan's Survey Sampled an Appropriate Universe .................................................................. 23

     C.   BillFloat Was Not Prejudiced By Appellees' Survey .................................................................... 25

     D.   Billfloat's Attempts to Smear Mr. Keegan are Reprehensible and Sanctionable ................................ 27

V.    Appellees Are Entitled To Recover Their Reasonable Attorneys' Fees Pursuant To Contract ................................ 28

VI.   Appellees Are Entitled To Recover Attorneys' Fees Pursuant To The Lanham Act ............................................ 30

     A.   Legal Standard ................................................................ 30

     B.   BillFloat's Claims Were Meritless and Unreasonable ............................................................... 31

          1.   Strength of the SMARTBIZ marks ...................... 31

          2.   Actual Confusion ................................................. 32

          3.   Defendants' Intent .............................................. 34

          4.   Marketing and Advertising Channels ................ 34

          5.   Consumer's Degree of Care ................................. 35

          6.   Other Factors Favoring Appellees ...................... 36

          7.   BillFloat's Claim for Breach of Contract Didn't Survive a Motion for Summary Judgment ............................................................. 37

8.  BillFloat's Unfair Competition Claim Was Invalid as a Matter of Law ................................. 38

C.  BillFloat's Litigation Conduct Was Unreasonable ...... 39

1.  BillFloat Has Offered No Evidence of a Pre-Litigation Investigation ....................................... 40

2.  BillFloat's Bad-Faith and Evasive Discovery Responses and Document Production Caused Unnecessary Discovery Cost and Burden .................................................................. 46

3.  BillFloat's Deposition Responses and Late Evidence Production Were Exceptionally Unreasonable ...................................................... 47

4.  BillFloat's Amendment to Add Abraham Cohen Was Pure Gamesmanship ........................ 48

VII. The District Court Erred By Failing To Award Non-Taxable Costs To Appellees Via The Contract And/Or The Lanham Act .................................................................. 49

CONCLUSION .................................................................... 52

CERTIFICATE OF COMPLIANCE ........................................ 53

STATEMENT OF RELATED CASES .................................... 54

CERTIFICATE OF SERVICE ................................................ 55

# TABLE OF AUTHORITIES

## CASES

*A.C.S.D.B.E. v. Murphy,*
    548 U.S. 291 (2006) ........................................................................ 51

*AMF Inc. v. Sleekcraft Boats,*
    599 F.2d 341 (9th Cir. 1979) ........................................................ 9

*Barrios v. California Interscholastic Fed.,*
    277 F.3d 1128 (9th Cir. 2002) ...................................................... 8

*Benigni v. City of Hemet,*
    879 F.2d 473 (9th Cir. 1988) ........................................................ 19

*Cairns v. Franklin Mint Co.,*
    24 F.Supp.2d 1013 (C.D. Cal. 1998) ...................................... 21, 37

*Cambrian Sci. Corp. v. Cox Commc'ns, Inc.,*
    79 F. Supp. 3d 1111 (C.D. Cal. 2015) ...................................... 39

*Champion Produce, Inc. v. Ruby Robinson Co.,*
    342 F.3d 1016 (9th Cir. 2003) ...................................................... 8

*Clicks Billiards, Inc. v. Sixshooters, Inc.,*
    251 F.3d 1252 (9th Cir. 2001) ...................................................... 23

*Committee for Idaho's High Desert, Inc. v. Yost,*
    92 F.3d 814 (9th Cir. 1996) .................................................... 21, 37

*Crawford Fitting Co. v. J.T. Gibbons, Inc.,*
    482 U.S. 437 (1987) ........................................................................ 51

*Daubert v. Merrell Dow Pharms.,* Inc.,
    509 U.S. 579 (1993) ........................................................................ 23

*Digital Reg of Tex., LLC v. Adobe Sys.,*
    Case No. C 12-1971 CW, 2015 U.S. Dist. LEXIS 29328
    (N.D. Cal. March 9, 2015) ............................................................ 39

*E. & J. Gallo Winery v. Gallo Cattle Co.,*
  967 F.2d 1280 (9th Cir. 1992) ........................................ 23

*Fiji Water Co. LLC v. Fiji Mineral Water U.S. LLC,*
  741 F. Supp. 2d 1165 (C.D. Cal. 2010) .......................... 36

*Fogerty v. Fantasy, Inc.,*
  510 U.S. 517 (1994) ........................................................ 31

*Fortune Dynamic, Inc. v. Victoria's Secret Stores*
  *Brand Mgmt., Inc.,*
  618 F.3d 1025 (9th Cir. 2010) ........................................ 23

*Grove v. Wells Fargo Fin. Cal., Inc.,*
  606 F.3d 577 (9th Cir. 2010) .................................... 50, 51

*His & Her Corp. v. Shake-N-Go Fashion Inc.,* No.
  211CV05323CASVBKX, 2015 WL 13604255
  (C.D. Cal. Apr. 6, 2015) ................................................. 25

*Hsu v. Abarra,*
  (1995) Cal.4th 863 .......................................................... 29

*In re Tobacco Cases II,*
  192 Cal.Rptr.3d 881 (Cal. Ct. App. 2015).................... 38

*Jenkins v. Union Pacific R. Co.,*
  22 F.3d 206 (9th Cir. 1994) .............................................. 8

*Kona Enter. Inc. v. Estate of Bishop,*
  229 F.3d 877 (9th Cir. 2000) ............................................ 8

*Kumho Tire Co. v. Carmichael,*
  526 U.S. 137 (1999) .......................................................... 7

*Masson v. the New Yorker Magazine, Inc.,*
  85 F.3d 1394 (9th Cir. 1996) ............................................ 7

*Meister v. Mensinger,*
  230 Cal.App.4th 381 (2014) .......................................... 38

*Monster Inc. v. Dolby Labs, Licensing Corp.,*
    920 F.Supp.2d 1066 (N.D. Cal. 2013) ...................................... 15, 20

*Network Automation, Inc., v. Advanced Sys. Concepts, Inc.,*
    638 F.3d 1137 (9th Cir. 2011) ..................................................... 9, 16

*Newmaker v. City of Fortuna,*
    842 F.3d 1108 (9th Cir. 2016) ........................................................... 7

*Nutrition Distribution LLC v. IronMag Labs, LLC,*
    978 F.3d 1068 (9th Cir. 2020) ........................................................... 8

*O'Hara v. Teamsters Union Local No. 856,*
    151 F.3d 1152 (9th Cir. 1998) ........................................................... 8

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.,*
    134 S. Ct. 1749 (2014) ........................................................... 4, 5, 30

*Prudential Ins. Co. v. Gibraltar Fin. Corp.,*
    694 F.2d 1150 (9th Cir. 1982), *cert. denied,*
    463 U.S. 1208 (1983) ................................................................ 23, 24

*Rimini St., Inc. v. Oracle USA, Inc.,*
    139 S. Ct. 873 (2019) ....................................................................... 51

*San Diego Comic Convention v. Dan Farr Prods.,*
    336 F. Supp. 3d 1172 (S.D. Cal. 2018)..................................... 19, 20

*Scott Co. v. Blount, Inc.,*
    20 Cal.4th 1103 (1999) .................................................................... 28

*SECALT SA v. Wuxi Shenxi Const. Machinery Co.,*
    668 F. 3d 677 (9th Cir. 2012) ....................................... 31, 49, 50, 51

*Shenxi Const. Machinery Co.,*
    668 F. 3d 677 (9th Cir. 2012) ......................................................... 49

*Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush & Co., Inc.,*
    240 F.3d 832 (9th Cir. 2001) .......................................................... 23

*Sullivan v. United States Dep't of Navy,*
    365 F.3d 827 (9th Cir. 2004) ............................................................. 7

*Summers v. Delta Air Lines, Inc.*,
    508 F.3d 923 (9th Cir. 2007) ............................................................ 7

*Sunearth, Inc. v. Sun Earth Solar Power Co.*,
    839 F.3d 1179 (9th Cir. 2016) .............................................. 5, 8, 30

*U.S. v. Braunstein*,
    281 F.3d 982 (9th Cir. 2002) .......................................................... 27

*Universal Elecs., Inc. v. Universal Remote Control, Inc.*,
    No. SACV 12-00329 AG (JPRx), 2015 U.S. Dist. LEXIS
    91403, 2015 WL 12733442 (C.D. Cal. Mar. 10, 2015).................... 39

*Whirlpool Props, Inc. v. LG Elecs. U.S.A., Inc.*,
    No. 1:03 CV 414, 2006 WL 62846
    (W.D. Mich. Jan. 10, 2006).............................................................. 25

## COURT RULES

Federal Rules of Appellate Procedure 38 ................................................ 27

Federal Rules of Civil Procedure 54(d)................................................... 51

Federal Rules of Evidence 611 ............................................................... 47

## STATUTES

15 U.S.C. §1117.............................................................................. *passim*

15 U.S.C. §1117(a) .................................................................. 1, 4, 6, 30

Business & Professions Code §§ 17200, et seq ....................................... 38

## OTHER AUTHORITIES

6 McCarthy On Trademarks § 32:188 (4th ed. 2010) ............................. 36

Black's Law Dictionary 668 (6th ed. 1990)............................................ 27

# STATEMENT OF THE CASE

This case has cost Appellees Collins Cash, Inc. ("Collins Cash") and Abraham Cohen ("Mr. Cohen")(collectively "Appellees") well over $350,000 to defend themselves from meritless claims that were litigated wholly unreasonably by Appellant BillFloat, Inc. ("BillFloat"). Collins Cash and Abraham Cohen are entitled to recover their reasonable attorneys' fees and non-taxable costs pursuant to both contract (and Cal. Civ. §1717) and the Lanham Act (15 U.S.C. §1117(a)).

BillFloat brought the present suit against defendant Collins Cash December 23, 2020, approximately six (6) years after Collins Cash began using its mark SMART BUSINESS FUNDING and more than five (5) years after BillFloat first knew of Defendants' use of SMART BUSINESS FUNDING. [2-SER-396.] The parties had also been doing business together for more than two years without incident or complaint. [2-SER-366-367.] Prior to suit, the PTO had also determined that there was no likelihood of confusion between the parties' marks. [1-SER-298 and 1-SER-298.] Prior to suit, BillFloat also had no evidence of actual confusion (or even a complaint regarding Defendants) despite *years* of each party's use and *millions* of opportunities for confusion. 3-SER-510-512.] [3-SER-

501-503.] (In fact, no evidence of a pre-suit investigation of any kind was provided at trial by BillFloat.) Despite knowing all this, BillFloat still pursued its baseless claims. [2-SER-315-326.]

BillFloat's unreasonable conduct continued during the litigation. In response to standard requests for document production, BillFloat produced roughly 98,000 pages of documents without an index. [1-SER-4.]. In contrast, BillFloat refused to provide basic documents standard to any trademark and breach of contract case such as financial statements or even proof of a signed contract between the parties. [1-SER-80-127.]. Instead, BillFloat "declined" to produce these documents despite them being readily available. *Id.* and [1-SER-24-27.]

BillFloat then filed its Second Amended Complaint to add Abraham Cohen personally to the litigation in an effort to expose him to BillFloat's bogus multi-million-dollar claim. [2-SER-300-314.]

BillFloat's bad faith litigation tactics continued. In May of 2022, Collins Cash and Abraham Cohen sought summary judgment on all claims, particularly due to the fact BillFloat had produced little or no evidence in support of its case. In particular, Cross-Appellants (at great cost) provided a consumer survey showing there was no likelihood of

confusion between the parties' marks. [2-SER-154-290.] BillFloat had no survey in response. It relied solely on a "small number" of instances of alleged actual confusion (most by non-consumers). [1-SER-49.] BillFloat also, in opposition to the motion for summary judgment, produced a witness (Brian Greiner) and documents that had not been produced during discovery. [1-SER-72-77 and 1-SER-80-83.] Ultimately, the District Court found there was no genuine dispute of material fact regarding the breach of contract claim and entered summary judgment against BillFloat's breach of contract claim. [ER-2198.]

Nevertheless, BillFloat continued to trial. At trial, BillFloat called only a single friendly fact witness, its CEO Evan Singer, and shamelessly pursued a multi-million-dollar damages claim and sought enhanced damages and attorneys' fees based on a completely unsubstantiated claim of willfulness. [2-ER-214-228, plaintiff's issues #7 and #8.] Thankfully, the jury saw through BillFloat's baseless claim for infringement and entered a verdict against BillFloat. [ER 16-18.] The District Court correctly entered judgment against BillFloat, after post-trial motions, on March 1, 2023. [1-ER2-15.]

The parties stipulated that they entered into the contract in Trial Exhibit 150 in June of 2018. [2-ER-214-228, Stipulated Fact #8.] The contract reads in relevant part:

> b. Governing Law. The Parties agree that this Agreement shall be governed by and construed in accordance with the laws of the State of California without regard to any conflict of law provisions. Should a dispute arise under or in relation to this Agreement, jurisdiction over and venue of any suit arising out of this Agreement shall be exclusively in the state and federal courts of San Francisco, California. ***If either Party employs attorneys to enforce any right arising out of or relating to this Agreement, the prevailing Party shall be entitled to recover reasonable attorneys fees.***

[2-SER-360.] Thus, pursuant to Cal. Civ. Code §1717, Collins Cash and Abraham Cohen are entitled to recover their reasonable attorneys' fees and non-taxable costs for the case.

Moreover, BillFloat's failed case for trademark infringement and breach of contract more than meets the exceptional case standard warranting an award of attorneys' fees and costs to Collins Cash and Abraham Cohen. The Lanham Act, 15 U.S.C. § 1117(a), authorizes an award of attorneys' fees to the prevailing party in an "exceptional case." As articulated by the Supreme Court and the Ninth Circuit, for a case to be "exceptional", Appellees need only to show that the case stands out from the ordinary. *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*,

134 S. Ct. 1749, 1756 (2014); *Sunearth, Inc. v. Sun Earth Solar Power Co.*, 839 F.3d 1179, 1181 (9th Cir. 2016). The trial court erred by partially denying Collins Cash and Abraham Cohen's motion for attorneys' fees and non-taxable costs and its ruling should be reversed and remanded accordingly.

## STATEMENT OF JURISDICTION

Appellees do not dispute BillFloat's "Statement of Jurisdiction." Appellees add that they timely cross-appealed the District Court's order partially denying defendants' motion for attorneys' fees on March 27, 2023.

## ISSUES PRESENTED

1.    Did the District Court abuse its discretion by denying BillFloat's Motion to Exclude Appellees' Trademark Survey Expert?

2.    Did the District Court abuse its discretion by denying BillFloat's Motions for a Directed Verdict and a New Trial?

3.    Did BillFloat fail to properly object to the jury instructions regarding likelihood of confusion?

4.     Did the trial court err by partially denying recovery of Cross-Appellants' attorneys' fees pursuant to the parties' contract and Cal. Civ. §1717?

5.     Did the trial court abuse its discretion by denying recovery of Cross-Appellants' attorneys' fees pursuant to the Lanham Act, §1117(a)?

6.     Did the trial court err by denying recovery of Cross-Appellants' non-taxable costs, particularly expert witness fees, pursuant to either the parties' contract or the Lanham Act?

## SUMMARY OF THE ARGUMENT

The trial court did not abuse its discretion by denying BillFloat's *Daubert* motion to exclude the testimony and consumer survey of Appellees' expert, Mr. Keegan.  Any deficiencies in the survey go to its weight, not admissibility.  BillFloat has also failed to properly object to the jury instructions regarding likelihood of confusion.  Moreover, the jury had substantial evidence in Appellees' favor on each *Sleekcraft* factor beyond the consumer survey and expert testimony supporting its verdict against BillFloat's trademark infringement claim.  In fact, BillFloat's case was so unreasonable that the trial court abused its discretion by the failing to award attorneys' fees and non-taxable costs through trial to

Appellees pursuant to the Lanham Act. The trial court also erred by failing to grant Appellees' attorneys' fees and non-taxable costs through trial pursuant to the parties' contract and Cal. Civ. Code §1717. At a minimum, the trial court was required by statute to award Appellees' non-taxable costs through the date of summary judgment on BillFloat's breach of contract claim.

## ARGUMENT

### I.    Standards of Review

The trial court's decision to admit or exclude expert testimony is reviewed for an abuse of discretion. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999); *Newmaker v. City of Fortuna*, 842 F.3d 1108, 1110 (9th Cir. 2016); *Summers v. Delta Air Lines, Inc.*, 508 F.3d 923, 926 (9th Cir. 2007); *Sullivan v. United States Dep't of Navy*, 365 F.3d 827, 832 (9th Cir. 2004). This Court also holds, "We review challenges to the district court's formulation of the jury instructions for an abuse of discretion by determining whether the instructions, considered as a whole, were inadequate or misleading." *Masson v. the New Yorker Magazine, Inc.*, 85 F.3d 1394, 1397 (9th Cir. 1996). Moreover, the Court in *Masson, supra,* cautions: ""[A]n error in the jury instructions does not

require reversal if it is more probable than not that the error was harmless." *Id. (citing Jenkins v. Union Pacific R. Co.*, 22 F.3d 206, 210 (9th Cir. 1994).)

The decision whether to award fees under the Lanham Act or State Law is reviewed for an abuse of discretion. *See SunEarth, Inc. v. Sun Earth Solar Power Co.*, 839 F.3d 1179, 1181 (9th Cir. 2016) (*en banc*) (per curiam); *Nutrition Distribution LLC v. IronMag Labs, LLC*, 978 F.3d 1068, 1081 (9th Cir. 2020); *See Champion Produce, Inc. v. Ruby Robinson Co.*, 342 F.3d 1016, 1020 (9th Cir. 2003); *Barrios v. California Interscholastic Fed.,* 277 F.3d 1128, 1133 (9th Cir. 2002). However, whether a state statute permits recovery of attorneys' fees or non-taxable costs is reviewed de novo. *See Kona Enter. Inc. v. Estate of Bishop*, 229 F.3d 877, 883 (9th Cir. 2000); *O'Hara v. Teamsters Union Local No. 856*, 151 F.3d 1152, 1157 (9th Cir. 1998).

## II.    The Jury Properly Found that BillFloat Did Not Meet Its Burden of Proof to Establish a Likelihood of Confusion.

The jury was properly instructed on eight *non-exhaustive* factors, known as the *Sleekcraft* factors, to determine whether a trademark use gives rise to a likelihood of confusion: (1) strength of the mark(s);

(2) proximity or relatedness of the goods; (3) similarity of the marks; (4) evidence of actual confusion; (5) marketing channels; (6) degree of consumer care; (7) the defendants' intent; and (8) likelihood of expansion. *Network Automation, Inc., v. Advanced Sys. Concepts, Inc.*, 638 F.3d 1137, 1145 (9th Cir. 2011)(*citing AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348–49 (9th Cir. 1979)) and [1-ER-41-42.] At trial, BillFloat failed to provide testimony and evidence supporting these factors in its favor and a finding of likelihood of confusion. It should be noted that the *Sleekcraft* factors are not a simple tallying of the factors. The operative jury instruction, offered without objection from BillFloat, states, "I will suggest some factors you should consider in deciding this. The presence or absence of any particular factor that I suggest should not necessarily resolve whether there was a likelihood of confusion, because you must consider all relevant evidence in determining this." [1-1-ER-41-42 and *see* 1-ER-161-162.] However, a review of the *Sleekcraft* factors clearly shows the jury had substantial evidence on which to base their verdict:

### a. Strength of the SMARTBIZ marks

The key phrase in the jury instruction is "The more the consuming public recognizes the plaintiff's trademark as an indication of origin of plaintiff's services, the more likely it is that consumers would be confused about the source of the defendant's services if the Defendants use a similar mark." *Id.* The "competitive landscape" that BillFloat entered when it adopted the SMARTBIZ mark in 2013 included SMART marks already. [6-ER-1166 and 2-SER-330.] SMART FUNDING SOLUTIONS was even identified as a competitor in 2013. *Id.* BillFloat had no qualms about adopting SMARTBIZ in 2013. Moreover, Appellees provided evidence that numerous other companies use SMART and BIZ and BUSINESS and FUNDING in their names. [6-ER-1163-1167, 2-SER-330-339, 8-ER-1775, and 2-SER-344.] This list includes SMART FUNDING SOLUTIONS, SMARTBANK, BIZLOANS, SMARTLOAN, AdvanceSmart, BETTER BUSINESS FUNDING, FAST BUSINESS FUNDING, and SMART BUSINESS. *Id.* Accordingly, the jury had more than enough evidence to find BillFloat's mark is weak with a limited scope.

Conversely, while Evan Singer testified that BillFloat spent "millions" of dollars on advertising over the years, he had no evidence of the *impact* of that advertising on the consuming public. [3-SER-546.] In fact, at trial, it was undisputed that BillFloat has done public perception surveys. [3-SER-327-329.] However, BillFloat did not produce the results of that survey or conduct one for the present litigation. BillFloat also admitted via Mr. Singer at trial that BillFloat had used about *500 different logos* since 2013. [3-SER-538-539.] Clearly, there are very practical reasons why public perception of the SMARTBIZ mark is weak and the jury had substantial evidence to find in Collins Cash and Abraham Cohen's favor.

### b. Proximity or Relatedness of the Goods

It was undisputed at trial that Appellees used SMART BUSINESS FUNDING overwhelmingly with brokers and with merchant cash advance services. In fact, Mr. Cohen's tax returns showed millions of dollars in commissions paid to brokers. [4-SER-985-986.]

Conversely, at trial, BillFloat proclaimed itself "the #1 provider of SBA Loans." [2-SER-405.] Mr. Singer then admitted he has no idea

how much revenue SMARTBIZ gets from referring out merchant cash advances.  [3-SER-524.]  He even testified that 80% of SMARTBIZ's revenue comes from just 20 partners.  [2-SER-439.]  BillFloat also made efforts to distinguish its services as superior to merchant case advance.  [6-6-ER-1147 and 6-ER-1164.]  It's clear this factor weighs in favor of Appellees as well and the jury had substantial evidence to find in Appellees' favor.

### c.    Similarity of the Marks

The key portion of the uncontested jury instruction is that comparison of the marks is done "*in the marketplace.*"  [1-1-ER-41.] The marks, as they appear in the marketplace, are dissimilar in sight, sound, appearance and meaning.  *Compare* [8-ER-1761-1802 and 8-ER-1635-1643.]  Even if one considers the plain text of the marks, differences are clear.  BillFloat uses one word, Appellees have three. *Id.*  BillFloat uses BIZ and Appellees use BUSINESS.  *Id.*  Appellees always use FUNDING, BillFloat does not.  *Id.*  Moreover, Appellees provided evidence that they use the "brain logo" with SMART BUSINESS FUNDING frequently.  [8-ER-1886-1889.]  Again, Evan Singer admitted that SMARTBIZ has used about 500 different logos

since 2013. [3-SER-538-539.]. The jury had substantial evidence to find the marks are different in sight, sound and appearance in the marketplace.

Moreover, BillFloat misrepresents the trial transcript regarding the use of SmartBiz is "shorthand" for "Smart Business Funding". BillFloat brief, p. 59. At trial, Mr. Cohen testified that he was aware that Yosef Scheff used the term "SmartBiz" in an excel spreadsheet. [ER-624.] Mr. Cohen **did not** testify that Appellees consider "SmartBiz" as shorthand for "Smart Business Funding." He was merely speculating as to why an unrelated third-party, Mr. Scheff, mistakenly wrote "SmartBiz" in a miscellaneous non-public spreadsheet. [3-SER-621.]

Furthermore, these sparse incidents are not evidence that *consumers* found the marks to be similar. Mr. Cohen testified at trial that Mr. Scheff was in the accounting department of a broker. [3-ER-622-623.] The jury had ample evidence to find in favor of Appellees on this factor.

### d. Actual Confusion

The actual confusion factor had substantial evidence in favor of Appellees and represents the unreasonableness of BillFloat's claim. Jury Instruction 16 states in relevant part:

> "you should weigh any instances of actual confusion against the opportunities for such confusion. If the instances of actual confusion have been relatively frequent, you may find there has been substantial actual confusion. If, by contrast, there is a large volume of sales, but only a few isolated instances of actual confusion, you may discount the weight of such evidence of actual confusion as part of your analysis of the actual confusion factor."

[1-1-ER-41-42.] There is no evidence of actual confusion between the marks. For example, when asked to identify any instances of actual confusion in its records, since at least as early as June of 2021, BillFloat has been unable to do so. [3-SER-500-502.]. Despite admitting at trial that BillFloat saves "all" of its emails [3-SER-475-476] and has processed 2 *million* loan applications [3-SER-643], CEO Evan Singer was unable to identify even a single instance of actual confusion or a complaint regarding Appellees' use of SMART BUSINESS FUNDING. [3-SER-500-502.] Moreover, it does not appear that BillFloat has ever conducted a search, either before or during litigation, regarding instances of actual confusion. *Id.*

Abraham Cohen testified that Collins Cash gets 40 to 50 thousand emails per year.  [3-SER-643.]  Given that both parties introduced evidence of the high volume of customer and potential customer communications, the *de minimis* number (6) – less than once per year since Collins Cash began using SMART BUSINESS FUNDING - of alleged instances of actual confusion from Collins Cash's records is a dramatic indicator that BillFloat's case is ***baseless*** and the jury had substantial evidence on which to agree.

### e.    Defendants' Intent

Appellees provided substantial evidence that they adopted SMART BUSINESS FUNDING as a mark without knowledge of SMARTBIZ.  *See* [3-SER-347-352 and 8-ER-1760.]. It should be noted that this factor is evaluated *at the time of adoption.*  BillFloat provided no evidence at trial that Mr. Cohen was aware of the SMARTBIZ mark *at the time of adoption* of SMART BUSINESS FUNDING.  *Monster Inc. v. Dolby Labs, Licensing Corp.*, 920 F.Supp.2d 1066, 1075 (N.D. Cal. 2013).  The court in *Monster Inc., supra,* expressly states that intent is determined *at the time of adoption.  Id.*  The Ninth Circuit also held, "[w]hen the alleged infringer *knowingly adopts* a mark similar to

another's, reviewing courts presume that the defendant can accomplish his purpose: that is, that the public will be deceived." *Network Automation, Inc. v. Advanced Sys. Concepts, Inc.,* 638 F.3d 1137, 1153 (9th Cir. 2011)(emphasis added).

Moreover, the jury heard evidence that Appellees received no objections from BillFloat. [2-SER-369.] Instead, SMARTBIZ told Appellees it wanted to do business with them as early as 2015. *Id.* Next, in 2016, both parties were copied on the same email and no complaint was made. [8-ER-1651.] In 2018, the parties entered a business relationship and continued to do business up to the date of suit. [2-SER-366-367.] In fact, the business relationship wasn't terminated until *four months after* the lawsuit was filed. [2-SER-373-375.] There is no evidence that Appellees intended to trade off the goodwill of BillFloat's SMARTBIZ mark in any way or that they were willfully infringing in any way. The jury had ample evidence on which to base their verdict.

### f.     Marketing and Advertising Channels

Both parties do use the Internet and email marketing. However, BillFloat admitted that 80% of its revenue comes from 20 partners. [2-

SER-439.]  Appellees provided undisputed testimony that 90% of their business come from word-of-mouth broker referrals.  [3-SER-628.]  This evidence alone was substantial enough for the jury to find there was little chance of confusion between the marks at issue and weigh the factor in Appellees' favor.

### g.    Consumer's Degree of Care

The relevant part of Jury Instruction No. 16 reads as follows:

> "The more sophisticated the potential consumers of the services or the more costly the services, the more careful and discriminating the reasonably prudent purchaser exercising ordinary caution may be."

[1-1-ER-42.]  Again, "potential consumers of the services" are at issue, not brokers.  Both Evan Singer [3-SER-541] and Abraham Cohen [3-SER-643] testified that many or most of their customers are "sophisticated."  Also, the evidence showed that BillFloat and Collins Cash's customers were taking on tens of thousands, if not hundreds of thousands, of dollars' worth of financing.  Mr. Singer admitted that the average BillFloat customer loan amount in 2020 was 100 to 125 thousand dollars.  [3-SER-541.]  Mr. Singer testified that, at its shortest, the process took 1-2 *days*.  [3-SER-542.]  Mr. Cohen testified that his average merchant cash advance is thirty to thirty-five

thousand dollars.  [3-SER-642.]  Mr. Cohen testified that the process takes 48 hours or more.  *Id.*  Mr. Cohen testified that his customers typically need to review and sign *ten* documents before they get funding.  *Id.*  Clearly, these are not snap decisions with miniscule consequences.  The jury had substantial evidence to find in Appellees' favor on this factor as well.

### h.    Service Expansion

SmartBiz provided no evidence at trial that it intends to expand into merchant cash advances and could not even estimate how much merchant cash advance business is referred out of the company to third parties.  [3-SER-524-2396.]  In fact, as shown above, BillFloat has distinguished their services as superior to merchant cash advance.  [6-ER-1147.]  The only evidence that Appellees operated in the SBA loan arena *was business referred directly to SMARTBIZ.  See* [2-SER-366-367.]  The jury had substantial evidence that the two companies deal in different services and the parties had no intention to expand into the realm of the other.

Accordingly, viewing the evidence at trial in favor of Appellees and drawing all reasonable inferences in favor of Appellees, there is ample evidence to support the jury's verdict (and each of the *Sleekcraft*

factors) and the judgment even prior to the introduction of Mr. Keegan's consumer survey.

### III. BillFloat Failed to Properly Object to the Jury Instructions Given by the District Court.

BillFloat claims that the District Court failed to properly instruct the jury that it did not need to present a consumer survey regarding a likelihood of confusion. BillFloat brief, p. 48. However, BillFloat fails to identify in the record where it objected to the District Court's instructions to comply with FRCP, Rule 51. The mere offer of an alternate jury instruction is not sufficient for appellate review of the jury instructions in this case. *Benigni v. City of Hemet*, 879 F.2d 473, 475-476 (9th Cir. 1988).

BillFloat's citation to *San Diego Comic Convention v. Dan Farr Prods.*, 336 F. Supp. 3d 1172 (S.D. Cal. 2018) is inapposite. In that case, neither party presented survey evidence regarding likelihood of confusion. *Id.* Moreover, BillFloat fails to cite any case that requires a District Court to take the extraordinary measure of affirmatively instructing a jury that a consumer survey on the issue of likelihood of

confusion is unnecessary to prove likelihood of confusion.[1]  On the

contrary, the *Comic Con* court itself stated that consumer survey

evidence is "helpful" and cited *Monster, Inc. v. Dolby Laboratories

Licensing Corp.*, 920 F.Supp.2d 1066, 1072 (N.D. Cal. 2013) expressly

holding that a trier of fact "may be entitled to presume that one party's

failure to conduct a survey concedes that the survey evidence would be

unfavorable to it."  There is no authority that a jury should be

affirmatively instructed to the contrary.  The jury's verdict and

judgment should be upheld.

IV.  **The District Court's Denial of BillFloat's Motion to
Exclude Appellees' Survey and Expert Testimony was
Proper.**

The *Sleekcraft* factors are non-exhaustive and the jury was

instructed to consider "all relevant evidence" on the issue of likelihood

of confusion.  [1-ER-41.]  Accordingly, Appellees also presented the

expert testimony of Mark Keegan regarding his consumer survey at

trial.  In fact, when accounting for the controls, Mr. Keegan's survey

found only an average of 6.3% of potential consumers were likely to be

---

[1] BillFloat's claim that it was prejudiced by having its failure to conduct
a survey pointed out to the jury is baseless.  BillFloat made no objection
to Evan Singer's own testimony on this issue.  [3-SER-501-502.]

confused between these marks. [4-SER-779.] This is far below the 15% rule of thumb for likelihood of confusion. [4-SER-830.] Survey evidence is not required to establish likelihood of confusion (or lack thereof), but it is often the most persuasive evidence. *Cairns v. Franklin Mint Co.*, 24 F.Supp.2d 1013, 1041 (C.D. Cal. 1998)(*citing Committee for Idaho's High Desert, Inc. v. Yost*, 92 F.3d 814, 822 (9th Cir. 1996)). BillFloat presented no contrary survey evidence. Thus, the jury had undisputed evidence beyond the *Sleekcraft* factors to find there was no likelihood of confusion.

BillFloat's repeated efforts to exclude the testimony and evidence of Mark Keegan highlight the value of this evidence and BillFloat's failure to conduct a survey of its own. The trial court properly denied BillFloat's *Daubert* motion and held BillFloat's arguments are, "largely challenges that go to the weight of the evidence." [ER-68.]

### A. Mr. Keegan Conducted a Proper *Squirt* Survey with Natural Controls.

Mr. Keegan's survey utilized the well-established "Squirt" survey format. [4-SER-794.] Taking its name from the case in which it was first used, the *Squirt* format places respondents into a marketplace scenario by exposing respondents to stimuli showing the contested in marks (often, and in this case, through sequential presentation), and

measuring the extent to which consumers believe the products or services using the contested marks originate from the same or affiliated companies, thereby gauging consumer confusion.

Mr. Keegan presented respondents with an actual screenshot of BillFloat's website that displays BillFloat's mark at issue in this case, SMARTBIZ. Contrary to BillFloat's contention, Mr. Keegan presented the natural controls and test as both an array and then sequentially. [4-SER-756-757 and 4-SER-837.] The array was utilized to provide notice to the respondent that there is a marketplace with a ranging of competing companies but then sequential shown to approximate real-world viewing conditions. The trial court previously ruled that this was admissible stating, "although Billfloat maintains that a consumer would not see the marks/webpages in some kind of blended sequential/array format, that it not clearly the case. If a consumer were evaluating goods/services offered on different websites, she might compare the goods/services by looking at those webpages sequentially, at the same time (i.e., having one screen with two windows open, one for each webpage), or some combination of both." [1-ER-68-69.] The District Court also previously ruled a separate control

group was not necessary. [1-ER-70.] The jury was free to consider Mr. Keegan's testimony and survey and the trial court's decision to admit them was proper.

### B. Mr. Keegan's Survey Sampled an Appropriate Universe.

BillFloat criticizes the "universe" of Mr. Keegan's survey as both underinclusive (p. 36) and overinclusive (p. 32). Ninth Circuit law is clear, however, that alleged flaws in a survey's universe "go to issues of methodology, survey design, reliability, … [and] critique of conclusions," and therefore "go to the weight of the survey rather than its admissibility." *Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt., Inc.*, 618 F.3d 1025, 1038 (9th Cir. 2010)(*citing Clicks Billiards*, 251 F.3d at 1263; cf. *Daubert v. Merrell Dow Pharms.*, Inc., 509 U.S. 579, 596, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). "Surveys in trademark cases may be considered so long as they are conducted according to accepted principles." *Clicks Billiards, Inc. v. Sixshooters, Inc.*, 251 F.3d 1252, 1262 (9th Cir. 2001) (*citing Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush & Co., Inc.*, 240 F.3d 832, 840 (9th Cir. 2001); *E. & J. Gallo Winery v. Gallo Cattle Co.*, 967 F.2d 1280, 1292 (9th Cir. 1992) (*citing Prudential Ins. Co. v. Gibraltar Fin. Corp.*, 694

F.2d 1150, 1156 (9th Cir. 1982), *cert. denied*, 463 U.S. 1208, 103 S. Ct. 3538, 77 L.Ed.2d 1389 (1983)). "Technical unreliability goes to the weight accorded a survey, not its admissibility." *Id*. Following the law in this Circuit, the trial court properly held, "Billfloat has failed to point to a fundamental problem with Mr. Keegan's universe that would require exclusion." [1-ER-69.] The trial court did not abuse its discretion by admitting the survey and Mr. Keegan's testimony regarding it.

Furthermore, the universe sampled by Mr. Keegan is clearly relevant in this case and provided the jury with a survey that is valuable, substantive evidence on the issue of likelihood of confusion. It is neither "under inclusive" nor "over inclusive." The double-blind survey of 240 likely purchasers of small business financing services from businesses with fewer than 100 employees and with revenues of less than $1 million/month, found that, on average, only a net 6.3% of the consumers surveyed were likely to be confused between these marks. [4-SER-779.] Again, viewing the survey evidence in the light most favorable to the Appellees and drawing all reasonable inferences in Appellees' favor, Mr. Keegan's testimony and evidence provided the jury yet another substantial basis to find in Appellees' favor in addition

to the *Sleekcraft* factors.  The trial court did not abuse its discretion by admitting the survey and Mr. Keegan's testimony.

**C.  BillFloat Was Not Prejudiced By Appellees' Survey.**

BillFloat fails to offer any empirical evidence showing that any of the purported "flaws" it asserts improperly impacted the outcome of Mr. Keegan's survey.  As one court explained:

> [T]he absence of competing survey evidence … significantly undermines the efficacy of plaintiff['s] arguments that defendants' evidence is so unreliable that it must be excluded," as plaintiff's methodological criticisms "would have been substantially aided by proof that the 'correct' methodology would have led to a different result."

*His & Her Corp. v. Shake-N-Go Fashion Inc.*, No. 211CV05323CASVBKX, 2015 WL 13604255, at *4 (C.D. Cal. Apr. 6, 2015) (*citing Whirlpool Props, Inc. v. LG Elecs. U.S.A., Inc.*, No. 1:03 CV 414, 2006 WL 62846, at *3 (W.D. Mich. Jan. 10, 2006).  At trial, BillFloat did not offer empirical evidence to support its criticisms. Instead, BillFloat and its rebuttal expert merely speculated on the possibility that another survey could yield a different result.

BillFloat's rebuttal expert, Dr. Pittaoulis, spent only 20-30 hours reviewing Mr. Keegan's report and drafting her rebuttal report.  [4-SER-886.]  Though criticizing Mr. Keegan's efforts, she provided no

actual example of what a proper survey would comprise and no actual example of what a survey questionnaire should comprise. For example, she claimed a fictional control would have been superior but did not generate one. [4-SER-892.] She claimed Mr. Keegan's survey universe was flawed but did not identify the proper universe, or methodology for obtaining one. [4-SER-894.] On the contrary, despite the clear value of a consumer survey as evidence, BillFloat did nothing. Collins Cash, a company with a single employee, and despite not having the burden of proof on this issue, produced a survey expert and consumer survey at trial. BillFloat's failure to obtain its own survey is its own fault. Moreover, the cries of a $100 million company that failed to obtain a consumer survey on the central issue at trial, likelihood of confusion, ring hollow at best.

BillFloat offers case law that says it was not obligated to conduct a survey. However, the cases it cites are cases where *neither party* conducted a survey. In those cases, trademark defendants merely criticized the various plaintiffs for not having a survey. Here, Appellees augmented already overwhelming evidence supporting the *Sleekcraft* factors with a survey and supporting testimony by Mr.

Keegan at trial. BillFloat's failure to offer a consumer survey at trial as an empirical rebuttal was its own decision, properly weighed by the jury and not an abuse of discretion by the District Court. BillFloat's appeal should be denied in its entirety.

### D. Billfloat's Attempts to Smear Mr. Keegan are Reprehensible and Sanctionable.

BillFloat spends much of its brief attempting to smear Mr. Keegan. For example, it refers to him as "a serial generator of defective surveys," "deceptive" and that he "intentionally" created a deceptive consumer survey. BillFloat brief, pp. 16, 19 and 24. The Ninth Circuit holds that "frivolous" means "groundless . . . with little prospect of success; often brought to embarrass or annoy the defendant." *Id.* at 1299 (citing Black's Law Dictionary 668 (6th ed. 1990)). *U.S. v. Braunstein*, 281 F.3d 982, 995 (9th Cir. 2002). As shown above, BillFloat's claims on appeal are baseless and intended to embarrass Appellees and Mr. Keegan. As such, these efforts are frivolous and sanctionable per FRAP, Rule 38 .

## V. Appellees Are Entitled To Recover Their Reasonable Attorneys' Fees Pursuant To Contract.

The parties stipulated that they entered into the contract in Trial Exhibit 150 in June of 2018. [2-ER-218, Stipulated Fact #8.] The contract reads in relevant part:

> b. Governing Law. The Parties agree that this Agreement shall be governed by and construed in accordance with the laws of the State of California without regard to any conflict of law provisions. Should a dispute arise under or in relation to this Agreement, jurisdiction over and venue of any suit arising out of this Agreement shall be exclusively in the state and federal courts of San Francisco, California. ***If either Party employs attorneys to enforce any right arising out of or relating to this Agreement, the prevailing Party shall be entitled to recover reasonable attorneys fees.***

[2-SER-360.](emphasis added.) Thus, pursuant to Cal. Civ. Code §1717, Appellees are entitled to recover *all* of their reasonable attorneys' fees and non-taxable costs. *See, e.g., Scott Co. v. Blount, Inc.* 20 Cal.4th 1103, 1109 (1999). The California Supreme Court in *Scott Co., supra,* explained:

> Every contractual attorneys' fees provision must be read in light of section 1717, and that section forecloses the Court of Appeal's semantic argument that defendant may not recover because it did not incur any attorney fees for the purposes of enforcing the contract or collecting damages. The goal of section 1717 is *full mutuality of remedy between parties to a contract, whether plaintiffs or defendants, in the matter of attorney fees.*

*Id.* (*citing Hsu v. Abarra* (1995) Cal.4th 863, 870)(emphasis added).

Thus, by attempting to enforce the contract against Appellees, BillFloat was on notice and subject to the same attorneys' fees provision pursuant to Cal. Civ. Code §1717. The California Supreme in *Scott, supra,* further held:

> When a party obtains a simple, unqualified victory by completely prevailing on or defeating all contract claims in the action and the contract a contains a provision for attorney fees, section 1717 entitles the successful party to recover reasonable attorney fees incurred in prosecution or defense of those claims.

*Id.* The District Court awarded Appellees their attorneys' fees only through entry of summary judgment on BillFloat's breach of contract claim. [1-ER-3-15 and 1-ER-2.]

However, as shown above, the present contract has a broad attorneys' fees clause that entitles a party to recover for an action to "enforce any right arising out of or *relating to* this Agreement". [2-SER-360.](emphasis added). BillFloat admits this includes its claim for trademark infringement. [4-SER-311.] In fact, paragraph 61 of the Second Amended Complaint in the third cause of action for breach of contract expressly states:

61. Defendants have materially breached its duties under the contract, **_including by intentionally infringing on Plaintiff's Marks_**.

*Id.* (emphasis added). The District Court abused its discretion by failing to award attorneys' fees incurred by Appellees after entry of summary judgment against the contract claim.

## VI. Appellees Are Entitled To Recover Attorneys' Fees Pursuant To The Lanham Act.

### A. Legal Standard

The Lanham Act provides reasonable attorneys' fees to the prevailing party in exceptional cases. 15 U.S.C. § 1117(a). The Supreme Court held that "an 'exceptional' case is simply one that stands out from others." *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 134 S. Ct. 1749, 1756 (2014). A case may "stand[] out from others" either "with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Id.* The Ninth Circuit has confirmed that the *Octane Fitness* standard for recovery of attorneys' fees applies in cases arising under the Lanham Act. *Sunearth, Inc. v. Sun Earth Solar Power Co.*, 839 F.3d 1179, 1181 (9th Cir. 2016). *Octane Fitness* clarified and lowered the standard for an exceptional case

finding. Prior to it, the Ninth Circuit required a showing that a case was "groundless, unreasonable, vexatious, or pursued in bad faith." *SECALT SA v. Wuxi Shenxi Const. Machinery Co.*, 668 F. 3d 677, 687 (9th Cir. 2012) (internal citation omitted). Further, in assessing whether to award fees, courts are to consider a party's "motivation" in pursuing litigation, and "the need in particular circumstances to advance considerations of compensation and deterrence." *Id.* at 1756 n.6 (2014) (*quoting Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534, n.19 (1994)) (internal quotation marks omitted).

## B. BillFloat's Claims Were Meritless and Unreasonable.

The *Sleekcraft* factors are discussed above and stand solidly in Appellees' favor. Prior to trial and at trial, BillFloat utterly failed to provide testimony and evidence supporting the weighting of these factors in its favor and a finding of likelihood of confusion. Further review of some of these factors shows that the case against BillFloat is exceptional and merits an award of attorneys' fees to Appellees.

### 1. Strength of the SMARTBIZ marks

The "competitive landscape" that BillFloat entered when it adopted the SMARTBIZ mark in 2013 included SMART marks already.

*See* [ER-1166 and 2-SER-330.] SMART FUNDING SOLUTIONS was identified as a competitor in 2013. *Id.* BillFloat had no qualms about adopting SMARTBIZ in 2013. Moreover, Defendants provided evidence that numerous other companies use SMART and BIZ and BUSINESS and FUNDING in their names. [8-ER-1163-1167, 2-SER-330-339, 8-ER-1775, and 2-SER-344.] This includes SMART FUNDING SOLUTIONS, SMARTBANK, BIZLOANS, SMARTLOAN, AdvanceSmart, BETTER BUSINESS FUNDING, FAST BUSINESS FUNDING, and SMART BUSINESS. *Id.* Most of these marks were known to BillFloat *prior to filing of the complaint.* [8-ER-1163-1167, 2-SER-330-339, and 2-SER-347-348.]. BillFloat knew its litigation efforts were unreasonable.

## 2. Actual Confusion

The actual confusion factor is the best indicia of the unreasonableness of BillFloat's suit. Jury Instruction 16 states in relevant part:

> "you should weigh any instances of actual confusion against the opportunities for such confusion. If the instances of actual confusion have been relatively frequent, you may find there has been substantial actual confusion. If, by contrast, there is a large volume of sales, but only a few isolated instances of actual confusion, you may discount the weight of such evidence of actual confusion as part of your analysis of the actual confusion factor."

[1-ER-41-42.] There is no evidence of actual confusion between the marks. For example, when asked to identify any instances of actual confusion in its records, since at least as early as June of 2021, BillFloat has been unable to do so. [3-SER-500-502.] Despite admitting at trial that BillFloat saves "all" of its emails and has processed 2 million loan applications [3-SER-643], CEO Evan Singer was unable to identify even a single instance of actual confusion or a complaint regarding Defendants' use of SMART BUSINESS FUNDING. Moreover, it does not appear that BillFloat has ever conducted a search, either before or during litigation, regarding instances of actual confusion.

Abraham Cohen testified that Collins Cash gets 40 to 50 thousand emails per year. [3-SER-643.] Given that both parties introduced evidence of the high volume of customer and potential customer communications, the *de minimis* number (6) – less than once per year since Collins Cash began using SMART BUSINESS FUNDING - of alleged instances of actual confusion from Collins Cash's records is a dramatic indicator that BillFloat's case was baseless and unreasonable.

### 3. Defendants' Intent

Appellees provided substantial evidence that they adopted SMART BUSINESS FUNDING as a mark without knowledge of SMARTBIZ. *See* [3-SER-347-352 and ER-1760.] Defendants received communications from BillFloat stating SMARTBIZ wanted to do business with them as early as 2015. [2-SER-369.] In 2016, both parties were copied on the same email and no complaint was made. In 2018, the parties entered a business relationship and continued to do business up to the date of suit. [2-SER-366-367.] In fact, the business relationship wasn't terminated until *four months* after the lawsuit was filed. There is no evidence that Appellees intended to trade off the goodwill of BillFloat's SMARTBIZ mark in any way or that they were willfully infringing in any way.

### 4. Marketing and Advertising Channels

Both parties do use the Internet and email marketing. However, BillFloat admitted that 80% of its revenue comes from 20 partners and defendants' undisputed testimony that 90% of their business come from brokers indicates that there is little chance for crossover and confusion.

These facts are not disputed or controversial. It was unreasonable for BillFloat to believe otherwise.

### 5. Consumer's Degree of Care

The relevant part of Jury Instruction No. 16 reads as follows:

> "The more sophisticated the potential consumers of the services or the more costly the services, the more careful and discriminating the reasonably prudent purchaser exercising ordinary caution may be."

[1-ER-42.] Again, "potential consumers of the services" are at issue, not brokers. Both Evan Singer and Abraham Cohen testified that many or most of their customers are "sophisticated." Also, the evidence showed that BillFloat and Collins Cash's customers were taking on tens if not hundreds of thousands of dollars' worth of financing. Mr. Singer admitted that average loan amount in 2020 was 100 to 125 thousand dollars. Mr. Cohen testified that his average merchant cash advance is thirty to forty thousand dollars. Mr. Cohen testified that the process takes 48 hours or more. Mr. Cohen testified that his customers typically need to review and sign *ten* documents before they get funding. Clearly, these are not snap decisions with miniscule consequences. It was unreasonable for BillFloat to believe confusion was likely.

Thus, no reasonable assessment of the *Sleekcraft* factors by BillFloat would lead them to believe they could be successful at trial.

### 6. Other Factors Favoring Appellees

BillFloat knew, long before the lawsuit was filed, that the USPTO agreed with this analysis, when despite being specifically aware of the SMARTBIZ trademark registrations, it allowed Collins Cash's trademark application for SMART BUSINESS FUNDING. [1-SER-296 and 1-ER-2.

More importantly, long before trial, Appellees obtained a consumer survey showing that there is no likelihood of consumer confusion between BillFloat and Collins Cash's marks. [1-SER-154-290.] In fact, when accounting for the controls, the Keegan Report found only an average of 6.3% of potential consumers were likely to be confused between these marks. *Id.* This is far below the 15% rule of thumb typically applied by Courts.[2]

---

[2] *Fiji Water Co. LLC v. Fiji Mineral Water U.S. LLC*, 741 F. Supp. 2d 1165, 1179 (C.D. Cal. 2010)("A confusion level of 24.3% approximates the 25% to 50% that is generally viewed as "solid support" for finding likelihood of confusion , and where there is other evidence weighing in favor of a likelihood of confusion , courts have held that findings of 15% to 20% confusion corroborate  that  likelihood.") *citing*  6 McCarthy On Trademarks § 32:188 (4th ed. 2010).

Survey evidence is not required to establish likelihood of confusion (or lack thereof), but it is often the most persuasive evidence. *Cairns v. Franklin Mint Co.*, 24 F.Supp.2d 1013, 1041 (C.D. Cal. 1998)(*citing Committee for Idaho's High Desert, Inc. v. Yost*, 92 F.3d 814, 822 (9th Cir. 1996)). BillFloat profited over $150 million in 2021. [3-ER-496.] BillFloat was clearly able to afford a survey. *Id.* As such, it is reasonable to infer that such a survey would be unfavorable to BillFloat. *Cairns, supra.* BillFloat, though far larger than Collins Cash, had no consumer survey evidence of any kind and it was unreasonable for it to proceed to trial in the face of such a survey.

### 7. BillFloat's Claim for Breach of Contract Didn't Survive a Motion for Summary Judgment.

BillFloat's contract cause of action was integrally tied to its trademark infringement claim and completely meritless. BillFloat's second amendment complaint alleged:

> 61. Defendants have materially breached its duties under the contract, ***including by intentionally infringing on Plaintiff's Marks***.

[4-SER-311.](emphasis added). Thus, all of the causes of actions involved the same Lanham Act issues. Nevertheless, BillFloat was unable to establish the existence of a genuine issue of material fact for its breach

of contract claim. [1-ER-3-15.] In fact, BillFloat was unable to produce evidence of a signed contract between the parties *until May of 2022*, roughly 18 months into the case. [1-SER-72-78 and 1-SER-80-83.] This is patently unreasonable conduct in the pursuit of a meritless claim. The trial court abused its discretion by failing to grant Appellees their attorneys' fees in their entirety.

### 8. BillFloat's Unfair Competition Claim Was Invalid as a Matter of Law.

BillFloat also brought baseless causes of action that were not pursued at trial. For example, BillFloat's fifth claim for Unlawful Business Practices, Cal. Bus. & Prof. Code §§17200, *et seq.* and restitution were invalid as a matter of law. *See* ECF No. 31, ¶ 75 and Prayer for Relief ¶ 2b. It is well settled law that nonrestitutionary disgorgement such as unjust enrichment is not a remedy under California Unfair Competition Laws(Cal. Bus. & Prof. Code §§17200, *et seq.*)" *In re Tobacco Cases II*, 192 Cal.Rptr.3d 881, 899 (Cal. Ct. App. 2015) (*quoting Meister v. Mensinger*, 230 Cal.App.4th 381, 178 Cal.Rptr.3d 604, 618 (2014) ). As such BillFloat's claim was irrefutably meritless as a matter of law.

## C. BillFloat's Litigation Conduct Was Unreasonable.

Following the Supreme Court's holding in *Octane Fitness, supra,* courts have focused on litigation conduct to justify attorneys' fees awards under the exceptional case standard. For example, the court in *Digital Reg of Tex., LLC* held, "A case may be exceptional based on the unreasonable manner in which it was litigated." *Digital Reg of Tex., LLC v. Adobe Sys.*, Case No. C 12-1971 CW, 2015 U.S. Dist. LEXIS 29328, *9 (N.D. Cal. March 9, 2015) (citation omitted). The court in *Digital Reg, supra,* cited a party's failure to produce material documents and neglecting to inform opposing counsel of a change in a witness' testimony to support exceptional case determination. *Id.,* and *see Cambrian Sci. Corp.*, 79 F. Supp. 3d 1111, 1120 (C.D. Cal. 2015) (citing party's unnecessary generation of discovery burdens and behavior in noticing a deposition to support exceptional case determination); *Universal Elecs., Inc. v. Universal Remote Control, Inc.*, No. SACV 12-00329 AG (JPRx), 2015 U.S. Dist. LEXIS 91403, at *15-16, 2015 WL 12733442 (C.D. Cal. Mar. 10, 2015) (*citing* plaintiff's provision of evasive responses to interrogatories and failure to supplement in a timely or straightforward manner to support exceptional case determination). BillFloat's conduct easily meets the exceptional case standard for an award of attorneys'

fees.  The trial court abused its discretion by failing to grant Appellees'
Lanham Act attorneys' fees.

### 1. BillFloat Has Offered No Evidence of a Pre-Litigation Investigation.

BillFloat, before and during trial, failed to offer any evidence that
it conducted a pre-litigation investigation to justify filing a lawsuit
against Collins Cash and Mr. Cohen.  *See, e.g.,* [3-SER-500-502.]  In fact,
Mr. Singer offered no testimony at trial as to what, if anything, BillFloat
did to investigate its alleged claim between allegedly first learning of
Collins Cash in November 2019 and sending the cease and desist letter
in April of 2020.  BillFloat, during that time, continued to do business
and communicate with Collins Cash.  [2-SER-370-372.]  More
importantly, nearly every point of defense in this case was identified in
response to BillFloat's April 2020 cease and desist letter by Collins Cash's
counsel to plaintiff's counsel months prior to the filing of the December
2020 lawsuit.  [2-SER-347-348.]  No investigation was conducted and
BillFloat unreasonably continued to pursue this case.

BillFloat fails to provide any evidence that it engaged in
reasonable litigation conduct.  BillFloat, for example, offers no evidence
that any kind of pre-suit investigation occurred.  [3-SER-500-502 and

3-SER-501-502.]  BillFloat brazenly claims, "On April 14, 2020, *shortly after learning of Collins Cash's use of the Smart Business Funding Mark, BillFloat sent a cease and desist letter to Collins Cash demanding that it terminate its use of the mark.*"  This is demonstrably false.  [3-SER-341-342.]  BillFloat admitted at trial that CEO Evan Singer had known of Collin Cash's use of SMART BUSINESS FUNDING since November 22, 2019.  *Id.*  BillFloat has offered no evidence of what it did in the ensuing five months (or the year leading up to the December 2020 complaint).  Instead, Evan Singer testified at trial as follows:

> Q:  Prior to April 14th of 2020, did you know of any instances where a customer contacted SmartBiz and indicated they believed SmartBiz was actually Smart Business Funding?
>
> A:    Not that I know of.
>
> Q:    Did you check before you sent that letter?
>
> A:    I don't - - I don't recall.
>
> Q:    I believe you testified today that SmartBiz stores all of its e-mails.  Did anybody go out and run a search?
>
> A:    I'm not sure.  Possibly.
>
> Q:    But you're not aware of it, are you?
>
> A:    I'm sorry?
>
> Q:    You're not aware of it, are you?

A:     I'm not aware of it, no.

Q. Prior to that date, April 14th, 2020, did you know of any instance where a prospective customer contacted SmartBiz and stated they believed SmartBiz was Smart Business Funding?

A. I'm sorry. Could you repeat that, please?

Q. Prior to April 14th, 2020, did you know of any instance where a prospective customer contacted SmartBiz and stated they believed SmartBiz was Smart Business Funding?

A. I don't believe so.

Q. Did you check before you sent that letter?

A. I - - I don't remember checking, no.

Q. Prior to April 14th, 2020, did you know of any instance where a customer or prospective customer complained to SmartBiz about Smart Business Funding?

A. I'm sorry, prior to what date?

Q. April 14th of 2020.

A. Right. I don't believe so.

Q. Did you check before you sent that letter?

A. I -- I don't recall, but I don't believe I did.

Q. Prior to April of 2020, did SmartBiz commission a survey of consumers to check for likelihood of confusion between plaintiff and defendant's marks?

A. No.

Q. Since April of 2020, has SmartBiz conducted a consumer survey regarding plaintiff and defendant's marks?

A. I don't believe so.

Q. Prior to April of 2020, did you check SmartBiz's records to see if SmartBiz was doing business with Smart Business Funding?

A. I - - I don't think so, no.

[3-SER-501-502.] BillFloat also records its calls and keeps transcripts of those calls. [3-SER-510-511.] Those transcripts were never checked. [3-SER-511.] BillFloat put all its social media accounts into evidence at trial and Evan Singer testified social media is "very important." [3-SER-491.] However, those "very important" accounts were never checked to see if there had ever been any mis-tags, complaints regarding Collins Cash or Mr. Cohen, or evidence of actual confusion there. [3-SER-511-512.] These are basic pre-investigation questions and documents that were never asked or checked or, alternately, BillFloat did check and knew there was no confusion but pursued its baseless claims anyway.

Further, BillFloat fails to acknowledge that key documents, such as BillFloat's Profit and Loss statements, were withheld from Appellees.[3] *See* [1-SER-80-127.] Those documents were provided to

---

[3] For example, Appellees were attempting to assert a mitigation defense to damages. [ER-48.]

BillFloat's damages expert, Dr. Smith, so he could prepare his report but not attached to his report. [3-SER-724-725.] This violates the rules on expert disclosures. FRCP, Rule 26(a)(2)(B). In fact, Evan Singer stated those documents were readily available. [1-SER-24-27.] Nevertheless, BillFloat "declined" to provide them. *See* [1-SER-80-127.]

BillFloat declined to answer interrogatories regarding the date of first use of its mark, its channels of trade, and whether the mark had been licensed to third parties. *See* [1-SER-80-127.] BillFloat refused to identify facts supporting paragraph 4 of the complaint which reads:

> 4. On or about June 6, 2018, Defendant applied to join the "SmartBiz Partner Program" ("Partner Program"). To join the Partner Program, Defendant was required to submit a Partner Enrollment Form and enter into a contract with Plaintiff (the "Agreement"), agreeing to be bound by Plaintiffs Terms and Conditions.

*Id.* and ER-1925. BillFloat refused to identify facts supporting paragraph 21 of the complaint which reads:

> 21. Plaintiff has expended, and continues to expend, considerable sums to advertise and promote its services under the SMARTBIZ Marks. Additionally, Plaintiff has been recognized as the nation's #1 facilitator of certain SBA loans, received outstanding customer satisfaction ratings, and obtained numerous awards for its business. By reason of its longstanding commercial success, Plaintiffs SMARTBIZ

> Marks and corresponding services are identified in the public's mind as originating with Plaintiff.

[ER-1928.] BillFloat even refused to provide the documents identified in its initial disclosures. *See* [1-SER-80-127.] As shown in the discovery and Mr. Singer's trial testimony, the party with the burden of proof and the burden of going forward in this case declined to provide basic documents and information repeatedly. The evidence clearly shows that BillFloat's litigation conduct was patently unreasonable. The District Court abused its discretion by not awarding attorneys' fees to deter this conduct from occurring in the future.

BillFloat's claim that it was forced to litigate the case through trial because of Appellees' settlement posture is baseless as well. The sole offer cited (despite multiple mediations being conducted) was an offer requested *by BillFloat* where Collins Cash and Mr. Cohen would stop using their non-infringing SMART BUSINESS FUNDING mark. That offer refers to a sum of money in exchange for Collins Cash giving up its lawful, non-infringing trademark of seven (7) years. Despite knowing that it had no evidence of confusion, that the PTO found that the marks were not confusingly similar, and that an unrebutted consumer survey found no likelihood of confusion, throughout the

litigation BillFloat inexplicably refused to settle the case without Collins Cash giving up its non-infringing mark for a nominal sum and no reimbursement for the costs of the baseless litigation inflicted on it by BillFloat. BillFloat's litigation conduct was unreasonable and merits an award of attorneys' fees and non-taxable costs.

**2.  BillFloat's Bad-Faith and Evasive Discovery Responses and Document Production Caused Unnecessary Discovery Cost and Burden.**

BillFloat's unreasonable conduct continued during the litigation. In response to standard requests for document production, BillFloat produced roughly 98,000 pages of documents without an index. [1-SER-4.] In contrast, BillFloat refused to provide basic documents standard to any trademark and breach of contract case such as financial statements or even proof of a signed contract between the parties *See* [1-SER-80-127.] Instead, BillFloat "declined" to produce these documents despite them being readily available. *Id.* and [1-SER-24-27.]

### 3. BillFloat's Deposition Responses and Late Evidence Production Were Exceptionally Unreasonable.

In June of 2021, the deposition of BillFloat's CEO, Evan Singer, also featured outlandish and obstructive behavior by BillFloat's counsel. In that deposition, BillFloat's counsel inexplicably objected to defense counsel's questions as "leading" *sixteen times*. [1-SER-43.] Leading questions of an adverse party/witness are expressly allowed under the Federal Rules of Evidence. FRE 611.

BillFloat's bad faith litigation tactics continued. In February of 2022, Appellees noticed the 30(b)(6) deposition of BillFloat, Inc. on a number of basic topics regarding liability and damages. [1-SER-135-140.] The deposition occurred on March 1, 2022. BillFloat produced only Evan Singer as a designated witness on all topics. However, he repeatedly indicated he had no knowledge on various topics or failed to produce documents upon which he relied. *See, e.g.,* [1-SER-24-42.]

BillFloat, in opposition to the motion for summary judgment, produced a witness (Brian Greiner) and documents that had not been produced during discovery, particularly in response to the 30(b)(6) deposition notice. [1-SER-72-77 and 1-SER-80-83.]

### 4. BillFloat's Amendment to Add Abraham Cohen Was Pure Gamesmanship.

In October of 2021, BillFloat filed its Second Amended Complaint to add Abraham Cohen personally to the litigation in an effort to expose him to BillFloat's bogus claim. *See* [2-SER-300-314.] At trial, under cross-examination, BillFloat's damages expert Dr. Smith admitted that he was retained shortly thereafter in December 2021 to concoct a multi-million dollar damages claim. [ER-3-SER-723-724.] In fact, Dr. Stan Smith and Dr. Melissa Pittaoulis, admitted that Dr. Smith, BillFloat's damages expert, was hired *months* prior to Dr. Pittaoulis was hired regarding a survey on the main issue of liability, namely likelihood of confusion. *Id.* and [4-SER-885.] It is clear that BillFloat had no belief in its case and merely was seeking to bully Collins Cash and Abraham Cohen into a settlement in the face of a massive damages claim.

BillFloat's litigation conduct was unreasonable and merits an "exceptional" case finding and recovery of Appellees' attorneys' fees. The District Court abused its discretion by failing to award attorneys' fees pursuant to the Lanham Act against BillFloat.

## VII. The District Court Erred By Failing To Award Non-Taxable Costs To Appellees Via The Contract And/Or The Lanham Act.

Appellees sought to recover non-taxable costs that they incurred and paid: (1) their expert witness, Mark Keegan; (2) for their depositions and hearings; and, (3) their travel costs. "[A]ttorney's fees under the Lanham Act may also include reasonable costs that the party cannot recover as the 'prevailing party.'" *SECALT S.A.*, 668 F.3d at 690. Recoverable costs need only be "reasonably incurred." *Id.* (awarding costs for "legal research," "deposition expenses," and "expert witness fees"). A chart summarizing the costs for which reimbursement was requested appears in the Excerpts of Record. [1-SER-22.] The majority of the costs are associated with survey expert Mark Keegan who provided critical evidence in the case on behalf of Appellees. *Id.* The work of trial presenter James Padilla was also highly useful and instructive to the jury. *Id.* These costs are recoverable under the Lanham Act, §1117 as a matter of law.

The Ninth Circuit has expressly held that the Lanham Act provides for the recovery of "non-taxable" costs. *SECALT SA v. Wuxi Shenxi Const. Machinery Co.*, 668 F. 3d 677, 690 (9th Cir. 2012). The

Ninth Circuit in *SECALT, supra,* advised, "attorneys' fees under the Lanham Act may also include reasonable costs that the party cannot recover as the 'prevailing party.'" *Id.*

Furthermore, the Ninth Circuit has held that attorney fee awards include non-taxable costs for any statute that authorizes such an award. *Grove v. Wells Fargo Fin. Cal., Inc.,* 606 F.3d 577, 580 (9th Cir. 2010). The Ninth Circuit held, "we repeatedly have allowed prevailing plaintiffs to recover non-taxable costs where statutes authorize attorney's fees awards to prevailing parties." *Id.* Thus, in addition to the Lanham Act, Appellees are entitled to recover their non-taxable costs pursuant to the contract and Cal. Civ. Code §1717. Cal. Civ. Code §1717 expressly provides a prevailing party "shall be entitled to reasonable attorney's fees *in addition to other costs*." (emphasis added.). A large portion of Mr. Keegan's costs were incurred *prior* to entry of summary judgment on BillFloat's contract claim. [1-SER-22.] The failure to award non-taxable costs, at least up to entry of summary judgment on the contract claim if not through trial, was clear error by the District Court.

The cases previously cited by BillFloat are either not controlling authority or unrelated to the issues at bar. In particular, the citation to *San Diego Comic Convention v. Dan Farr Prods.*, No. 18-56221 (9th Cir. Apr. 20, 2020) is inappropriate as the decision expressly states it is "NOT FOR PUBLICATION." It is not an *en banc* decision of the Ninth Circuit and cannot overrule the prior Ninth Circuit panels of *SECALT, supra* and *Grove, supra*. The Supreme Court cases cited in the *San Diego Comic Convention* case are also distinguishable. The case of *Rimini St., Inc. v. Oracle USA, Inc.*, 139 S. Ct. 873, 877-78, 203 L. Ed. 2d 180 (2019) refers solely to the Copyright Act. The case of *A.C.S.D.B.E. v. Murphy,* 548 U.S. 291, 292 (2006) refers to the Individuals with Disabilities Education Act (IDEA) and is controlled by the Spending Clause of the U.S. Constitution. The Supreme Court explained, "Thus §1415(i)(3)(B)'s text does not authorize an award of additional expert fees, and it certainly fails to present the clear notice required by the Spending Clause." *Id.* The case of *Crawford Fitting Co. v. J.T. Gibbons, Inc.,* 482 U.S. 437, 439 (1987) refers to FRCP, Rule 54(d). In fact, *Crawford, supra,* expressly permits recovery via contract. *Id.* Thus, clear Ninth Circuit authority supports Appellees'

recovery of their non-taxable costs as a matter of law. The District Court's refusal to award non-taxable costs should be reversed in its entirety.

## CONCLUSION

This Court should affirm the judgment entered by the District Court in favor of Appellees and should reverse the partial denial of attorneys' fees and non-taxable costs to Appellees and award all attorneys' fees and non-taxable costs to Appellees pursuant to the Lanham Act and Cal. Civ. Code §1717.

Dated: September 22, 2023          MANDOUR & ASSOCIATES APC


                                    /s/ Ben T. Lila
                                   **Ben T. Lila**
                                   **Gordon E. Gray**
                                   Attorneys for Appellees/Cross-Appellants
                                   Collins Cash, Inc. and Abraham Cohen

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 8. Certificate of Compliance for Briefs

**9th Cir. Case Number(s)**  23-15405, 23-15470

I am the attorney or self-represented party.

**This brief contains 9,753 words,** including 0 words manually counted in any visual images, and excluding the items exempted by FRAP 32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

[XX] complies with the word limit of Cir. R. 32-1.

[ ] is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

[ ] is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

[ ] is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

[ ] complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:

 [ ] it is a joint brief submitted by separately represented parties.

 [ ] a party or parties are filing a single brief in response to multiple briefs.

 [ ] a party or parties are filing a single brief in response to a longer joint brief.

[ ] complies with the length limit designated by court order dated _____.

[ ] is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** /s/ Ben T. Lila  **Date** September 22, 2023

**UNITED STATES COURT OF APPEALS**
**FOR THE NINTH CIRCUIT**

**Form 17. Statement of Related Cases**
**Pursuant to Circuit Rule 28-2.6**

**9th Cir. Case Number(s)** __23-15405, 23-15470__

The undersigned attorney or self-represented party states the following:

[XX]  I am unaware of any related cases currently pending in this court.

[ ] I am unaware of any related cases currently pending in this court other than the case(s) identified in the initial brief(s) filed by the other party or parties.

[ ] I am aware of one or more related cases currently pending in this court. The case number and name of each related case and its relationship to this case are:

**Signature** __/s/ Ben T. Lila__        **Date** __September 22, 2023__

**CERTIFICATE OF SERVICE**

I hereby certify that on September 22, 2023, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

/s/ Ben T. Lila
Ben T. Lila